HOMER E. SHADLE V. CLEVELAND ELECTRIC ILLUMINATING CO.

1. DANGERS OF WORK IN BUILDING OF THIRD PARTY—ASSUMED.

There is a difference in the obligation of the emyloyer, in respect to furnishing a suitable place for the employe to work, where the work is done upon the premises of a third party, instead of at the shop ·or factory of the employer. Therefore an experienced workman, acting within the scope of his employment and without specific instructions as to the manner of performing his work in putting electric light wires in the shaft of a building not controlled by his employer, assumes the dangers incident to such work, by reason of defects in the shaft or its machinery, of which he had knowledge equal to that of the employer.

2. EXCEPTIONS FAILING TO SHOW EVIDENCE SOUGHT.

Judgment will not be reversed for sustaining an objection to a question asked in the direct examination of a witness, where the exception does not show what testimony was expected of the witness, and particularly when the answer if given could not have been competent or of any benefit to the party asking it.

HEARD ON ERROR.

*Kerruish, Chapman & Kerruish,* for plaintiff in error.

*Hoyt, Dustin & Kelley,* and *Squire, Sanders & Dempsey,* for defendants in error, cited:

Distinction between contributory negligence and assumption of risk: Tuttle v. Railway Co., 7 Sup. Ct. Rep., 1166 [122 U. S., 189, 195]; Farwell v. Railroad Co., 4 Metc., 49, 56; Miner v. Railway Co., 153 Mass., 398 [26 N. E. Rep., 994]; Pierce v. Clavin, 82 Fed., 550, 553; Foley v. Lighting Co., 54 N. J. L., 411 [24 Atl. Rep., 487]; W. & G. Railway Co. v. McDade, 10 Sup. Ct. Rep., 1044 [135 U. S., 554]; Appeal v. Railway Co., 19 N. E. Rep., 93; Swanson v. Lafayette, 134 Ind., 625 [33 N. E. Rep., 1033].

Knowledge of dangers: Pratt v. Prouty, 153 Mass., 333 [26 N. E. Rep., 1002]; Big Stone Co., v. Wolf, 138 Ind., 496 [38 N. E. Rep., 52]; Ames v. Railway Co., 135 Ind., 367, [35 N. E. Rep., 117]; Olson v. McMullen, 34 Minn., 94 [24 N. W. Rep., 318]; Coal and Car Co. v. Norman, 49 Ohio St., 598 [32 N. E. Rep., 857]; Coal Co. v. Estievenard, 53 Ohio St., 43 [40 N. E. Rep., 725]; Krause v. Morgan, 53 Ohio St., 26 [40 N. E. Rep., 886]; Railway Co. v. Leech, 41 Ohio St., 388:

No negligence presumed nor approved against defendant: Huff v. Austin, 46 Ohio St., 386 [21 N. E. Rep., 864, 15 Am. St., Rep., 613]; Dixon v. Telegraph Co., 68 Fed., 630, 633; Ib., 71 Fed., 143; Trask v. Railway Co., 156 Mass., 293, 303 [31 N. E. Rep., 6]; Hughes v. Gas Light Co., 86 Mass., 395 [47 N. E. Rep., 125].

MARVIN, J.

This is a proceeding in error to the court of common pleas of Cuyahoga county. The plaintiff here was the plaintiff below. The defendant here was a defendant below, as was also the Cleveland Building Company. The last named defendant, however was dismissed out of the

case so that the trial was between the plaintiff Shadle and the defendant in error.

The cause of action was for injuries received by the plaintiff while in the employ of the defendant, on July 10, 1895, which injuries, he says, were due wholly to the negligence of the defendant and, in no wise attributable to any negligence on his own part.

At the close of the plaintiff's evidence the court, on motion of the defendant, instructed the jury to return a verdict in favor of the defendant, which was done. A motion for a new trial was filed by the plaintiff, and overruled. Exceptions were taken to the action of the court in directing a verdict for the defendant and to its overruling the motion for a new trial. Various exceptions were taken by the plaintiff to the ruling of the court upon the introduction of evidence during the progress of the trial, and it is claimed on the part of the plaintiff that such error was committed by the court, as requires a reversal of the judgment, which was entered upon the verdict.

The facts are that the plaintiff was an experienced workman in the matter of putting in and connecting electric wires in buildings and other places where such wires are used. The plaintiff was sent by the defendant to a business block in the city of Cleveland, known as the Garfield building, for the purpose of stringing temporary wires in such building for lighting the same with electricity. The wires were strung in a shaft or opening which was adjoining the elevator shaft of the building. This shaft extended from the top to the bottom of the building which was ten stories (about 150 feet) in height. The necessity for this work arose from the fact that a day or two before plaintiff's injury a fire had occurred in the building and destroyed the wires which had theretofore supplied the building with electricity. This shaft was about twelve feet long by two and one-half feet wide, and in this shaft the counter-weights, which were heavy pieces of iron, ascended and descended in opposition to the elevators which were in an adjoining shaft. These counter-weights ran in grooves against the wall of the shaft and were substantially noiseless in their operations. There was a wall of separation between the elevator shaft and the shaft in which the plaintiff was working. At each floor of the building was a toilet room from which a door opened into this shaft; there was no other means of entering the shaft from any one of the floors except by means of passing through the toilet room and the door leading from such room into the shaft.

On the fourth floor and on the seventh floor these toilet rooms were exclusively for the use of ladies.

At the time of the injury the plaintiff was working at the seventh floor. He had asked his foreman if he might not be permitted to enter the shaft through the toilet room door, and was told that the managers of the building would not permit it. The door was locked, and he reached the place where he was at work by passing through the door of the toilet room on the eighth floor and climbing down some wires which had been suspended in the shaft before that time as far as the seventh floor. Across the shaft at this seventh floor was a water-pipe of iron, about an inch in diameter, and the plaintiff supported himself while engaged in his work, on this water-pipe. At the time of the injury he was sitting upon it. The only light which was in this shaft was obtained by means of an outside window at each floor. These windows were not large and, by reason of the fire already mentioned, were somewhat smoky, and the light was faint, so faint that the plaintiff says one could

Shadle v. Illuminating Co.

not read in there at all. On one side of the shaft was a large iron pipe, spoken of as a " pressure pipe," extending the entire length of the shaft from top to bottom, and that was held against the wall by iron bands, about one-half inch thick, the pipe itself being about twelve inches in diameter; one of these bands was on a level with the seventh floor.

A fellow workman of the plaintiff, who was at the eighth floor, called out to him that he was about to drop something and that he (the plaintiff) must look out or he might be hurt. Thereupon, the plaintiff says in his testimony : " I told him to wait until I could get out of the road. I was sitting on the pipe, and I raised my foot and started to put my other foot on this iron band and just as I put my foot on there, I judge the band dropped, and I went up and got caught in the weight. * * * I put one foot on the pipe, and the other on this band. The pipe was right back of me like that (indicating). The first thing I knew, I went against the wall, and the weight came up and caught me and carried me up."

The fact is that, as the plaintiff put his foot against this iron band which surrounded the "pressure pipe," either from the moving of the band or the slipping of his foot, he was caught by one of the counterweights already mentioned and which was then going up, and he was dragged up to the tenth story and lost his leg.

The negligence charged against the defendant is that it " was grossly negligent and careless in the premises in this, that having full knowledge and information of all the failures, negligences, refusals, perils, difficulties and risks" surrounding the shaft and its appliances and the manner of its construction, " through its superintendent directed, and commanded and in so commanding beguiled and compelled plaintiff for the purposes and in the manner aforesaid, into the above described contrivance of danger in the manner aforesaid."

The petition avers that the place where the plaintiff was put to work, was a very dangerous place to work by reason of the darkness and want of any proper place for his support, and the running of these counterweights up and down the side of the shaft.

The evidence shows that on the day preceding the plaintiff's injury, he was in this shaft for a considerable time engaged in this same kind of work ; he was at this seventh floor but, he says only a minute or two.

It seems clear that he had all the means of knowing what the dangers incident to this work were, as completely as the defendant had means of knowing. He knew that the defendant had made no careful inspection of the surroundings here, nor had *he* made any careful inspection ; he received no specific instructions from his foreman as to the manner in which the work should be done. He was told by the foreman, Mr. Tripp, to do this work, and was also told by him that it would be impossible to have the door of the toilet room open for him to get into the shaft.

So far as the matter of light is concerned, he knew all about that, for he had been there the day before. This is equally true as to the means for supporting himself while in the shaft, and as to the working up and down of the counter-weights. Indeed, there seems to have been nothing particularly dangerous about his position or surroundings of which he had not full knowledge, except, possibly, the security of the band surrounding the pressure pipe, this half-inch band on which he says he placed his foot, when it fell.

The plaintiff knew that the building was under the control of its owners or manager, and *not* under the control of the defendant. And there is a difference in the obligation of the employer in the manner of furnishing a suitable place for the employe to work where it is to be done upon the premises of a third party, and where it is to be done at the shop or factory of the employer.

In Dixon v. Western Union Telephone Co., 68 Fed. Rep., 630, the plaintiff sued to recover for injuries sustained by him while in the employ of the defendant, by reason of the insecurity of an iron spike driven into the telegraph or telephone pole of another company, which he had occasion to climb in the discharge of his duty as an employe of the defendant.

On page 633 this language is used in the opinion:

"The plaintiff was acting within the scope of his employment, in going, as a pioneer, into a place of danger, which he knew his employer had not inspected, and could not inspect, except by causing him, or some other employe, to perform that duty. He was a man of mature age, and needed no instruction to warn him of his danger or his duty. He knew that no one knew of the condition of the pole or the spikes better than he did, and that no one could know better than he the sufficiency of the spikes to bear his weight. If he gave the matter a thought, he knew that he must rely upon his own judgment, in placing his weight upon the spikes, and that before doing so he ought to test them, to see if they were sufficiently secure to trust his weight upon them. Under such circumstances he had no right to rely on the judgment or inspection of his foreman."

Hughes v. Malden and Melrose Gas Light Co., 47 N. E. Rep. 125; [168 Mass., 395]. This was an action brought by an employe of the light company for injuries received while he was working in a trench which had been excavated by the city in one of its streets. The sides of the trench gave way, and the plaintiff was seriously injured. The *syllabus* of the case reads:

"At the trial of an action against a gas light company for personal injuries to the plaintiff, while in its employ, caused by the caving in of the sides of the trench in which the plaintiff was at work, there was evidence that the trench had been dug four days previously by a city in one of its streets, and that although the earth in that vicinity was constantly shaken by the moving of trains and heavy teams, and although the trench was six feet wide and of about the same depth, having earth thrown up on either side to an additional height of eighteen inches, it had not been shored or braced; that by the digging of the trench, over which the defendant had no control, its gas pipe had been exposed, and that, pursuant to orders from the city to remove such pipe from the trench, it set the plaintiff to removing it; that the plaintiff had had two or three years' experience in digging trenches; and that the accident happened after he had been at work three hours, and just after the defendant's superintendent had left the trench. *Held*, that the plaintiff was not entitled to recover, either at common law or under the employers' liability act, and that evidence offered by him that he made no examination of the trench, but relied on the defendant's superintendent to provide for his safety, was properly excluded."

In the opinion, on page 396, this language is used:

"The only question is what the plaintiff had a right to expect from the defendant when set to work in such a place. He had not a right to expect it to shore the sides of the trench or to make it safer than it was

Shadle v. Illuminating Co.

because, as was manifest, and as the plaintiff must be taken to have known, the defendant had no control over the trench. He had a right to expect that, if the defendant knew of any danger which the plaintiff did not know and ought not to be assumed to know, it would inform him. But no such knowledge on the part of the defendant was shown. It does not appear to have known anything except what was visible to the eye, or to have been able or bound to infer from what was visible anything which the plaintiff with his experience was not equally able to infer. What more could it have done?"

How can it be claimed here that the defendant either had knowledge of any defect or want of security in this band upon which the plaintiff placed his foot, or ought to have had such knowledge, to any extent greater than the plaintiff had or ought to have had such knowledge, it is difficult to understand.

We think the court was clearly justified in the course pursued in directing the jury to return a verdict for the defendant.

As to the questions raised upon the introduction of evidence, it is sufficient to say that in each instance the exception taken is to a ruling of the court sustaining an objection made by the defendant to a question put by the plaintiff's attorney in the examination of his own witness, and, in no instance, is it stated what answer was expected from the witness.

The first of these rulings is upon this question, put by the plaintiff's counsel to the plaintiff:

"Well, when you got down to that place that day and found such insecure footing, the place to do your work, why didn't you get out?

Not only was it not here stated what answer it was expected the witness would give if he were permitted to answer, but it seems difficult to think of any answer which could, by possibility, have been competent.

However, counsel immediately upon the sustaining of the objection by the court to this question, asked substantially the same question in these words:

"When you found yourself down there on that, in that place, why didn't you get out?"

And the witness answered: "I intended to as quick as I got the wires connected."

Question. "Why didn't you get out before you got the wires connected?"

Answer. "I don't know."

Question. "Tell us how you could get out then."

Answer. "No way, only slide down to the next floor; slide down to the sixth floor to get out, the same as I slid down from the eighth to the seventh."

It is clear that in no view that can be taken of the case, was there any error in the ruling of the court on this question.

The next complaint made on the introduction of evidence is found on page 51 of the record, the same witness being on the stand, and questioned by his own counsel.

Question. "If you had thus turned around so as to face those four wires that were hanging down, you may state how you could have supported yourself."

This question was objected to, and the objection sustained. As already said, no statement was made as to what answer was expected

from the witness, but, as he had already described his surroundings, it would not seem that an answer could have been given which would have been of any benefit whatever to the plaintiff.

Without calling special attention to the other rulings of the court upon the introduction of evidence, it is sufficient to say, we find no, error in such rulings, which would justify a reversal.

And the judgment of the court of common pleas is affirmed.